**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
JANIMARY HERNANDEZ,
*on behalf of herself and all others similarly situated*,

                    Plaintiff,

          - against -

J. C. PENNEY COMPANY, INC.,

                 Defendant.
---------------------------------------------------------x

Case No. 1:18-cv-05759

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff JANIMARY HERNANDEZ (hereinafter "Plaintiff" or "Plaintiff HERNANDEZ"), on behalf of herself and all others similarly situated, by her undersigned attorneys, as for her Complaint against the Defendant, J. C. PENNEY COMPANY, INC., alleges the following:

## NATURE OF ACTION

1. This action is brought by Plaintiff JANIMARY HERNANDEZ on behalf of herself and all consumers in the United States who have received unsolicited and unconsented-to commercial text messages to their mobile phones from J. C. PENNEY COMPANY, INC. (herein "Defendant or JCPENNEY") in violation of the Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action arises out of a violation of federal law - 7 U.S.C. § 227(b). *See Mims v. Arrow Fin. Serv.*, LLC 132 S. Ct. 740 (2012).

3. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. In the alternative, this Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this District. Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendant operating, conducting, engaging in or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

4. Venue is proper in this District under 28 U.S.C § 1391 because Defendant's violation of the Telephone Consumer Protection Act (TCPA) took place in this District, where Plaintiff HERNANDEZ received unlawful text messages from Defendant.

## PARTIES

*Plaintiff*

5. Plaintiff HERNANDEZ is a citizen of the state of New York and a resident of Bronx County.

*Defendant*

6.     Defendant, J. C. PENNEY COMPANY, INC., is an online/department store chain headquartered at 6501 Legacy Drive, Plano, Texas 75024 with its agent and address for service of process listed at THE CORPORATION TRUST COMPANY, 1209 Orange Street, Wilmington, Delaware 19801.

## FACTUAL ALLEGATIONS

### The Telephone Consumer Protection Act

7.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., was enacted by Congress in 1991 and is implemented by the Federal Communications Commission ("FCC"). In its June 18, 2015 Declaratory Ruling and Order ("2015 TCPA Order"), the FCC explained the original purposes of the TCPA:

> As its very name makes clear, the Telephone Consumer Protection Act is a broad "consumer protection" statute that addresses the telemarketing practices not just of bad actors attempting to perpetrate frauds, but also of "legitimate businesses" employing calling practices that consumers find objectionable… The TCPA makes it unlawful for any business—"legitimate" or not—to make robocalls that do not comply with the provisions of the statute. While the Commission has traditionally sought to "reasonably accommodate[] individuals' rights to privacy as well as the legitimate business interests of telemarketers,"…, we have not viewed "legitimate" businesses as somehow exempt from the statute, nor do we do so today.

2015 TCPA Order ¶ 2 n.6

8.     The 2015 TCPA Order also explained the continuing relevance of the TCPA, especially in connection with wireless consumers:

> Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The Telephone Consumer Protection Act (TCPA) and our rules empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive… With this Declaratory Ruling and Order, we act to preserve consumers' rights to stop unwanted robocalls, including both voice calls and texts, and thus respond to the many who have let us, other federal agencies, and states

3

know about their frustration with robocalls.

2015 TCPA Order ¶ 1

9. The TCPA makes it "unlawful for any person… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a paging service, cellular telephone service… or any service for which the called party is charged for the call…" 47 U.S.C. § 227(b)(1)(A)(iii).

10. "Prior express content" requires:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8)

11. In addition, the written agreement must include a clear and conspicuous disclosure informing the signer that:

> By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice;

§ 64.1200(f)(8)(i)(A)

and

> The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

§ 64.1200(f)(8)(i)(B)

12. The 2015 TCPA Order reaffirmed the FCC's longstanding position that text

4

messages qualify as "calls" under the TCPA. ¶107.

13. Additionally, the 2015 TCPA Order confirmed that text messages which originate from the Internet fall within the ambit of the TCPA's prohibitions. The text and legislative history of the TCPA revealed "Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as new technologies emerge." ¶ 113

**Defendant Violated the TCPA**

14. Plaintiff HERNANDEZ visited a JCPENNEY store in December of 2016. Upon checkout, the retail associate asked Plaintiff HERNANDEZ if she would like to receive a discount on her current purchase by providing her phone number and email. Plaintiff HERNANDEZ never consented to receiving promotional and marketing text messages on her mobile phone.

15. After making her purchase and receiving her discount, Plaintiff HERNANDEZ began receiving frequent texts about promotions at JCPENNEY. Below is an example of the types of marketing text messages that Plaintiff HERNANDEZ receives from Defendant:



16.     **EXHIBIT A** contains sample texts Plaintiff HERNANDEZ received from Defendant. The impersonal nature of the messages sent to Plaintiff HERNANDEZ from a short code number shows that JCPENNEY uses an auto dialer/texter to send its message. Shortcode

6

numbers are widely used in automated services.[1] The word automation is defined in the dictionary as "the technique, method, or system of operating or controlling a process by highly automatic means, as by electronic devices, reducing human intervention to a minimum"[2]. Defendant does not send messages to its customers on an individual basis that requires human intervention for each message sent. Defendant's unsolicited messages and the process is automated. Other members of the class received the exact same messages at around the same time.

17. Plaintiff HERNANDEZ is part of a T-Mobile family-plan with her husband. **EXHIBIT B** contains the full list of all texts received from the number Defendant uses for its unsolicited marketing and promotional messages. JCPENNEY has sent 132 messages to date. JCPENNEY continues to send messages to Plaintiff HERNANDEZ'S phone. *See* **EXHIBIT B**.

18. Defendant sent similar unsolicited marketing texts using an automated telephone texting system to other similarly situated persons, who likewise never consented to receiving them. The text messages sent to Plaintiff HERNANDEZ were unwanted, annoying, and a nuisance. Plaintiff HERNANDEZ would often expect important messages updates, and would open her phone to Defendant's invasive messages instead. In order to identify the sender, Plaintiff would have to unlock her phone and view the actual message. The messages were disruptive and diminished the Plaintiff's usage and enjoyment of her phone. The Second Circuits recent decision has acknowledged that such non-financially related injury allegations are enough to support standing under the TCPA; *See Mejia v Time Warner Cable, Inc.*, 2017 US Dist LEXIS 120445 [SDNY Aug. 1, 2017, No. 15-CV-6445 (JPO)].) Plaintiff HERNANDEZ has a concrete injury sufficient to confer Article III standing. *See Van Patten v Vertical Fitness Group, LLC*, 847 F3d

---

[1] https://www.techopedia.com/definition/22052/short-code

[2] http://www.dictionary.com/browse/automation

1037(9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified."); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017).

19. Subsequent to the filing of the original Complaint, Defendant has argued that it has not violated the TCPA because the text messages were authorized by Plaintiff herself after she consented to the following agreement:

> By providing my mobile number, I agree to receive autodialed promotional text alerts from JCPenney to that number. I understand that consent is not required to purchase goods or services. Message and data rates may apply. Up to 8 msgs/month from 527365 (JCPenney). Text **HELP** to 527365 for help and **STOP** to 527365 to cancel. View privacy policy.
>
> view terms + conditions
>
> By signing up, I agree to receive autodialed promotional text alerts from JCPenney at the mobile number I provided, including coupons, advertisements, events, polls, give-aways, sweepstakes and contests, downloads, photos and information alerts from JCPenney. I understand that I am not required to provide my consent as a condition of purchasing any goods or services.
>
> Message and data rates may apply from my mobile provider. I understand I will receive a confirmation text message that I must reply to with the requested keyword to complete registration.
>
> By entering and submitting enrollment information above, I agree to receive autodialed promotional text alerts from JCPenney including up to 8 SMS messages per month. Prices mentioned in the promotional text alerts may vary in Alaska and Puerto Rico. I also affirm that I am authorized to agree to receive autodialed promotional text alerts on this phone number and that I am responsible for any mobile message or data rates incurred. To opt out, reply **STOP** to any message or text **STOP** to 527365 (JCP365). Please note that texting **STOP** to 527365 will always result in an opt-out confirmation text to be sent to your phone. You will not receive any messages from JCPenney promotional text alerts thereafter, unless you explicitly text **STOP, HELP, JOIN** or other advertised keywords connected to the program or fill out an opt-in form online. For help, reply **HELP** to any message or text **HELP** to 527365 (JCP365) or call 1.800.322.1189 or email mobile@jcpenney.com. View privacy policy.
>
> List of supported carriers as of March 21015. Carriers subject to change. AT&T, Verizon-Alltel, T-Mobile®, Sprint, U.S. Cellular, Boost, MetroPCS, Virgin Mobile, Cricket, nTelos, Cellcom, C Spire Wireless (Cellsouth), Cincinnati Bell, Carolina West Wireless, Appalachian Wireless, Chariton Valley Cellular, Coral Wireless, Cross (dba Sprocket), DTC Wireless, Duet IP, EpicTouch, Leaco, Mosaic, Nemont/Sagebrush, Peoples Wireless, Pine Cellular, Pioneer, Revol Wireless, STRATA Networks, NNTC Wireless, Snake River PCS, Breakaway Wireless, All West Communications, Syringa Wireless, South Central Communications, CTC Wireless, Silver Star, United Wireless, Aio Wireless, ACS Wireless, Bluegrass Cellular, Cablevision, Cellone Nation, Cellular One of East Central Illinois, Chat Mobility, Copper Valley, Flat Wireless LLC, GCI Communications, Golden Star Cellular, Illinois Valley Cellular, Immix/Keystone Wireless, Inland Cellular, iWireless, Northwest Missouri Cellular, Panhandle Telecommunications, Plateau Wireless, SouthernLINC Wireless – SouthernLINC Communications, SRT Wireless – SRT Communications, Thumb Cellular, Union Cellular, Viaero Wireless, West Central Wireless (WCC)

Extracted from ECF # 18.

20. Plaintiff has no recollection of consenting to any such agreement.

21. However, even if Plaintiff did consent to such an agreement, Defendant remains in violation of the TCPA. By its terms, this is an agreement to receive up to <u>eight</u> (8) text messages per month. But Plaintiff HERNANDEZ received <u>nine</u> (9) commercial text messages from Defendant in March 2018, starting on March 2 and ending on March 31. *See* **Exhibit B**. Thus, the ninth text was unauthorized by any agreement and accordingly violates the TCPA.

22.     Defendant sent similar such excess texts to other Class members, whether in March 2018 or over other months during the Class period, even if they authorized some of the texts they received in an agreement.

23.     Defendant's current publicly available TCPA agreement also has an eight (8) monthly maximum on texts.  *See* **Exhibit C**.

24.     Defendant did not implement any policies that tracked the number of text messages to recipients, resulting in TCPA violations.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff HERNANDEZ seeks to represent a class consisting of:

> All persons in the United States who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendant[3] (the "Nationwide Class")

26.     In the Alternative, Plaintiff HERNANDEZ seeks to represent a class consisting of

> All persons in New York who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendant (the "New York Class")

27.     Should discovery reveal that Class members signed a valid consent agreement to receiving autodialed texts, Plaintiff HERNANDEZ proposes to represent a class consisting of:

> All persons in the United States who, beginning four years prior to the filing of this action, received text messages to their cellular

---

[3] See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff.");In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); Horton v. USAA Cas. Ins. Co., 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

phones from Defendant in excess of the number allowed for by their consent agreements (the "Excess Texts Nationwide Class")

28. Should the Court not certify the Excess Texts Nationwide Class, Plaintiff HERNANDEZ alternatively proposes to represent a class consisting in:

All persons in New York who, beginning four years prior to the filing of this action, received text messages to their cellular phones from Defendant in excess of the number allowed for by their consent agreements (the "Excess Texts New York Class")

29. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

30. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

31. Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of Class members, who may be identified from records maintained by Defendant or by their own record of text messages. These members may be notified of the pendency of this action by mail, or by advertisement, using the form of notice customarily used in class actions such as this.

32. Plaintiff's claims are typical of the claims of all Class members as all Class members are similarly affected by Defendant's wrongful conduct.

33. Plaintiff will fairly and adequately protect the interests of Class members because Plaintiff has no interests antagonistic to theirs. Plaintiff has retained experienced and competent counsel.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for Class members to individually seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, Defendant would likely be able to persist in its unlawful conduct with impunity.

35. Common questions of law and fact exist as to all Class and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Classes are:

   a. whether Defendant sent unsolicited marketing text messages to cellular phones belonging to Plaintiff and the Classes;

   b. whether Defendant used an automated telephone texting system to do so;

   c. whether text recipients provided their prior express consent;

   d. whether the number of texts received by Class members was in excess of the number allowed for by any consent agreement;

   e. whether Defendant's conduct is intentional or negligent; and

   f. whether Plaintiff and the Classes are entitled to damages for Defendant's conduct.

36. Class membership is readily ascertainable from electronic records.

37. The prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too

small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

39. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant acts or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

40. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Clasess predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

41. The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain members of the proposed Class are not parties to such actions.

42. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 *et seq*.

**(Brought on behalf of Plaintiff and Class)**

43. Plaintiff HERNANDEZ realleges and incorporates herein by references the allegations contained in all preceding paragraphs and further alleges as follows:

44. Plaintiff HERNANDEZ brings this claim individually and on behalf of the other members of the Class for Defendant's violations of the TCPA.

45. Defendant directly or vicariously violates the TCPA when it uses an automated telephone texting system to send unsolicited and unauthorized marketing texts to the cellular phones of Plaintiff and the Class.

46. The TCPA, 47 U.S.C. § 227(b)(3), provides:

**(1)** Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

  **(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

  **(B)** an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

  **(C)** both such actions.

47. Additionally, the TCPA provides that the Court may, at its discretion, treble the statutory damages if it finds that Defendant's violation are willful or knowing. 47 U.S.C. § 227(b)(3)

48. Defendant's violations of the TCPA were willful and knowing. Defendant would be liable to Plaintiff and the Class even if their actions were negligent.

49. Defendant should also be enjoined from engaging in similar unlawful conduct in the future.

50. Accordingly, Plaintiff and the Class are entitled to all damages referenced herein, attorney's fees, costs, treble damages, injunctive relief, and any other remedies allowed by the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A) For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B) For an Order declaring that Defendant's conduct violates the TCPA;

(C) For an Order finding in favor of Plaintiff and members of the Class;

(D) For statutory or treble damages for each violation of the TCPA, as determined by the evidence presented at trial;

(E) For prejudgment interest on all amounts awarded;

(G) For an Order enjoining Defendant from further violations of the TCPA;

(H) For an Order awarding Plaintiff and members of the Class their reasonable attorney's fees and expenses and costs of suit; and

(I) For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Plaintiff, on behalf of herself and the Class, demand a trial by jury on all questions of fact raised by this Complaint.

Dated: October 26, 2018

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: /s/ C.K. Lee
 C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*