**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JANIMARY HERNANDEZ, *on behalf of*
*herself and all others similarly situated,*

                             Plaintiff,

    v.

J. C. PENNEY COMPANY, INC.,

                             Defendant.

           **Case No.: 18-CV-05759**

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AN ORDER (1) CONDITIONALLY**
**CERTIFYING SETTLEMENT CLASS,**
**(2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS**
**ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING**
**DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS,**
**AND (4) SETTING DATE FOR FINAL APPROVAL HEARING AND RELATED DATES**

**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone:  (212) 465-1188
Fax: (212) 465-1181

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

OVERVIEW OF THE LITIGATION .................................................................................. 2

SUMMARY OF THE PROPOSED SETTLEMENT .......................................................... 4

    I.      Settlement Class Definition ...................................................................... 4

    II.     Individual Class Member Benefits........................................................... 4

    III.    Group Relief and Additional Relief ........................................................ 5

         A.     Safeguard as to Future Text Messaging ...................................... 5

         B.     Payment of Notices and Administrative Fees ............................. 5

         C.     Service Awards ............................................................................ 5

         D.     Attorneys' Fees ........................................................................... 6

         E.     Release ......................................................................................... 6

    IV.    Survey of Comparable TCPA Class Settlements……………………………6

ARGUMENT ................................................................................................................... 9

    I.      Preliminary Approval of the Settlement Is Appropriate ......................... 9

         A.     The Settlement Is Fair, Reasonable, and Adequate ................... 12

             1.     Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)............................................. 13

             2.     The Reaction of the Class Has Been Positive (Grinnell Factor 2) ....................................................................... 14

             3.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)................. 14

             4.     Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5) .......................................... 15

             5.     Establishing a Class and Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6)................................. 16

             6.     Defendants' Ability to Withstand a Greater Judgment Is Not Clear (Grinnell Factor 7)...................................... 17

             7.     The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) ........................................... 17

    II.    Conditional Certification of the Rule 23 Class Is Appropriate............................ 19

         A.     Numerosity........................................................................... 20

          B.     Commonality......................................................................... 21

**TABLE OF CONTENTS**
(continued)

**Page**

B.    Typicality .................................................................................. 21

D.    Adequacy of the Named Plaintiff ............................................... 22

E.    Certification Is Proper Under Rule 23(b)(3) .............................. 22

1.    Common Questions Predominate ................................... 23

2.    A Class Action is a Superior Mechanism ...................... 23

III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel .............................. 24

IV.    The Proposed Notice Is Appropriate ....................................................... 25

A.    The Proposed Notices Satisfy Due Process ............................... 25

B.    The Notice Plan, Award Distribution Process, and Release are
Appropriate ................................................................................ 26

V.    Proposed Schedule of Events……………………………………………27

CONCLUSION........................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*ACA Int'l v. FCC*
  885 F.3d 687 (D.C. Cir. 2018) ..........................................................................16

*Accord Surdu v. Madison Global, LLC*
  No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *4 (S.D.N.Y. Mar. 23, 2018) ..............12, 13

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591, 617 (1997) ..............................................................................23

*Beckman v. KeyBank, N.A.*
  293 F.R.D. 475 (S.D.N.Y. 2013) .................................................................14, 17

*Berkson v. Gogo, LLC*
  147 F. Supp. 3d 123, 133 (E.D.N.Y. 2015) ...................................................14

*Charron v. Wiener,*
  731 F.3d 241 (2d Cir. 2013)......................................................................10, 26

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974).............................................................................12

*Clark v. Ecolab, Inc.*
  04 Civ. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) ...........................10

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ................................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park*
  47 F.3d 473, 483 (2d Cir. 1995) ...................................................................20

*County of Suffolk v. Long Island Lighting Co.,*
  710 F. Supp. 1422 (E.D.N.Y. 1989), *aff'd in part, rev'd in part on other*
  *grounds,* 907 F.2d 1295 (2d Cir. 1990) ......................................................20

*D'Amato v. Deutsche Bank*
  236 F.3d 78 (2d Cir. 2001) .........................................................................13, 14

iii

*Denney v. Deutsche Bank AG*
    443 F.3d 253, 268 (2d Cir. 2006) .................................................................. passim

*Duran v. La Boom Disco, Inc.*
    369 F. Supp. 3d 476 (E.D.N.Y. 2019) ........................................................16

*Fabricant v. Sears Roebuck & Co.*
    202 F.R.D. 310 (S.D. Fla. 2001)..................................................................20

*Feder v. Frank (In re HP Inkjet Printer Litig.)*
    716 F.3d 1173, 1179 (9th Cir. 2013) ..........................................................18

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982)..............................................................................21, 23

*Grant v. Warner Music Grp. Corp.,*
    No. 13-CV-4449 (PGG), 2015 WL 10846300 (S.D.N.Y. Aug. 21, 2015) ............................20

*Henry v. Little Mint, Inc.,*
    No. 12 CIV. 3996 CM, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...................................15

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...........................................................13, 14

*In re Baldwin-United Corp.*
    105 F.R.D. 475, 485 (S.D.N.Y. 1984) ........................................................12

*In re Domestic Air Transp. Antitrust Litig.*
    148 F.R.D. 297, 324 (N.D. Ga. 1993) ........................................................17

*In re Doria/Memon Disc. Stores Wage & Hour Litig.,*
    No. 14 CIV. 7990, 2017 WL 4541434 (S.D.N.Y. Oct. 10, 2017) .........................................22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*
    No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ...................... passim

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
    55 F.3d 768, 790-92 (3rd Cir. 1995) .......................................................... passim

*In re Michael Milken & Assoc. Sec. Litig.*
    150 F.R.D. 57, 66 (S.D.N.Y. 1993) ............................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*
   176 F.R.D. 99, 102 (S.D.N.Y. 1997) ..................................................................10

*In re PaineWebber Ltd., P'ships Litig.*
   171 F.R.D. 104, 125 (S.D.N.Y. 1997) ...............................................................15

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .........................11

*In re Traffic Executive Ass'n*
   627 F.2d 631, 634 (2d Cir. 1980) ....................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..............................................................................10

*Joel A. v. Giuliani*
   218 F.3d 132, 138-39 (2d Cir. 2000) ................................................................19

*Kaye v. Amicus Mediaiton & Arbitration*
   300 F.R.D. 67, 81 (D. Conn. 2014) ..................................................................23

*Kelen v. World Fin. Network Nat. Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) ........................................................................10

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ......................................................................22

*Marisol A. v. Giuliani*
   126 F.3d 372, 376 (2d Cir. 1997) ............................................................. passim

*Martens v. Smith Barney, Inc.*
   181 F.R.D. 243, 259 (S.D.N.Y. 1998) ....................................................... passim

*McReynolds v. Richards-Cantave*
   588 F. 3d 790, 803 (2d Cir. 2009) ...................................................................11

*Myles v. AlliedBarton Sec. Servs., LLC*,
   No. 12 Civ. 05761, 2014 WL 6065602 (N.D.C.A. Nov. 12, 2014) ......................27

*Peoples v. Annucci*,
   180 F. Supp. 3d 294 (S.D.N.Y. 2016)...............................................................11

*Raniere v. Citigroup Inc.*
   310 F.R.D. 211, 219 (S.D.N.Y. 2015) ..........................................................17, 18

*Reed v. Gen. Motors Corp.*
   703 F.2d 170, 175 (5th Cir. 1983) ........................................................15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...............................................................26

*Romero v. La Revise Assocs.*,
   L.L.C., 58 F. Supp. 3d 411 (S.D.N.Y. 2014) ............................................11, 12, 19

*Sanders v. CJS Sols. Grp., LLC*,
   No. 17 CIV. 3809 (ER), 2018 WL 620492 (S.D.N.Y. Jan. 30, 2018)...................22

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011)...................................................................20

*Snead v. Interim HealthCare of Rochester, Inc.*,
   286 F. Supp. 3d 546 (W.D.N.Y. 2018) ...................................................11

*STATE v. NINTENDO OF Am., INC.*
   775 F. Supp. 676, 681 (S.D.N.Y. 1991) ...............................................18

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*
   No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................16

*Vargas v. Howard*,
   No. 1:15-CV-5101-GHW, 2018 WL 387896 (S.D.N.Y. Jan. 10, 2018) ................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................9, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................24

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................24

Federal Rule of Civil Procedure 23 ................................................... passim

Federal Rule of Civil Procedure 23(b)(3) ........................................ passim

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 13.10 (5th ed.
   2017) .............................................................................................. passim

Rule 23(a).............................................................................................19, 20

Rule 23(a)(4) ...................................................................................................................22

Rule 23(c)(2)(B) ..........................................................................................................25, 26

Rule 23(c)(3) ...................................................................................................................25

Rule 23(g) .......................................................................................................................24

## PRELIMINARY STATEMENT

This proposed class action settlement arises from allegations that Defendant, J. C. Penney Company, Inc., transmitted unlawful commercial text messages to the wireless phones of consumers in violation of the Telephone Consumer Protection Act, 47 U.S.C. 227 *et* seq. (the "TCPA"). Subject to Court approval, Plaintiff Janimary Hernandez ("Plaintiff") and Defendant J. C. Penney Company, Inc. ("Defendant" or "J.C. Penney") (collectively, the "Parties"), have agreed to settle this consumer class action through the distribution of $10.00 Merchandise Certificates to each of the estimated 2,006,081 Class Members who received an allegedly unlawful text, as detailed below, as well as attorneys' fees and costs. This agreement also affords Class Members with injunctive relief in the form of measures intended to avert a recurrence of the allegedly unlawful activity.  The settlement satisfies all the criteria for preliminary approval.

Plaintiff respectfully submits this unopposed motion requesting that the Court enter the attached Proposed Order and: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A** to the Declaration of C.K. Lee ("Lee Decl."); (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only; (3) approve the Notice to Class Members ("Proposed Notice"), Lee Decl., **Exhibit B**; (4) approve the proposed form of Merchandise Certificates, Lee Decl., **Exhibit C**; (5) approve the proposed notices for final distribution of Merchandise Certificates, Lee Decl., **Exhibit D**; (6) approve Plaintiff's proposed schedule for final settlement approval and set a date for the Final Approval Hearing and related dates; (7) appoint C.K. Lee of Lee Litigation Group PLLC ("Plaintiff's Counsel") as Class Counsel; and (8) grant approval for the Parties to appoint either RUST Consulting or EPIQ as Claims Administrator. Lee Decl., **Exhibit E** contains a Proposed Order.

1

## <u>OVERVIEW OF THE LITIGATION</u>

On June 26, 2018, Plaintiff, Janimary Hernandez, commenced this class action lawsuit against Defendant, J. C. Penney Company, Inc., in the United States District Court for the Southern District of New York, Case No. 1:18-CV-05759, alleging that J. C. Penney violated the TCPA by sending multiple commercial text messages to Plaintiff Hernandez and others similarly situated, without the prior express consent that the law requires. Plaintiff sought to recover, on behalf of herself and others similarly situated, statutory or treble damages for each violation of the TCPA, as determined by the evidence presented at trial, and an Order enjoining Defendant from further violations of the TCPA, and attorneys' fees and costs.

On September 10, 2018, Defendant contacted Plaintiff and argued that the texts were lawful because Plaintiff and other text recipients had opted into receiving J.C. Penney's promotional texts. Defendant reproduced the purported agreement, which stated in pertinent part:  "By providing my mobile number, I agree to receive autodialed promotional text alerts from JCPenney to that number. I understand that consent is not required to purchase goods or services. Message and data rates may apply. Up to 8 msgs/month from 527365 (JCPenney). Text **HELP** to 527365 for help and **STOP** to 527365 to cancel."

On October 26, 2018, Plaintiff filed her First Amended Class Action Complaint (ECF No. 22), alleging that even if J.C. Penney's texts were generally lawful, J.C. Penney violated the TCPA in March 2018 when it sent Plaintiff and other recipients a ninth text in violation of the foregoing agreement, which limited J.C. Penney to sending eight (8) texts monthly.

On December 12, 2018, following informal settlement discussions between the Parties, Plaintiff informed the Court of the Parties intention to engage in class-wide mediation with Defendant and dropped her opposition to Defendant's motion to stay the case pending anticipated FCC guidance, whereupon the Court stayed the case. On May 2, 2019, after having engaged in

numerous informal telephonic settlement discussions, the Parties engaged in a full-day in-person mediation with Martin Scheinman, an experienced mediator with Scheinman Arbitration and Mediation Services.  The parties by this point understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, the extent of potential class wide damages, and the likelihood of class action certification. The parties did not reach a settlement at the mediation but continued to negotiate the terms through Mr. Scheinman. After much heated negotiation and discussions over the course of almost five months, an agreement in principle was finally reached in September 2019. In the interim, they exchanged discovery, serving and responding to each other's interrogatories and document production requests. Through discovery, the Plaintiff learned of Defendant's telemarketing policies and practices, with Defendant taking steps to identify individuals who had received nine (9) text messages in March 2019.

The Parties agreed that the receipt of the ninth allegedly unlawful text would be the basis of settlement. Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, threatened, or attempted to commit, any wrongful act or violation of law or duty as alleged in the Complaint and Amended Complaint. J. C. Penney maintains that it acted properly in all respects in the sending of text messages to the putative members of the alleged class, and that its actions were not in violation of the TCPA.

On February 14, 2020, the parties stipulated to replace Defendant J. C. PENNEY COMPANY, INC. with J. C. PENNEY CORPORATION, INC. Since J. C. PENNEY COMPANY, INC is simply a holding company, the more appropriate Defendant is J. C. PENNEY CORPORATION, INC., the operating company responsible for J. C. Penney operations.

## SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

I.    **Settlement Class Definition.**  The settlement class is defined as follows:

"All persons who received Contested Texts from Defendant between January 1, 2014 and the date of entry of the Preliminary Approval Order," with "Contested Texts" defined as "any text messages sent by Defendant to Plaintiff and Class Members in excess of eight text messages in a calendar month, including but not limited to, a ninth text message in March 2018."

Excluded from the Class are any entities in which Defendant has a controlling interest, counsel for the parties or Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family. Class Members are treated as a class for purposes of settlement only.  Defendants do not admit or concede that class treatment is appropriate for any other purposes.

II.   **Individual Class Member Benefits.** A Class Member who does not properly and timely exclude themselves from the settlement shall receive a $10.00 voucher ("Merchandise Certificate") that can be redeemed up to its face value for merchandise purchases (exclusive of any and all shipping costs and taxes that may apply) of $10.00 or more at any of Defendant's J. C. Penney stores or at Defendant's online retail store at www.jcpenney.com, subject to the following terms and conditions:

    i.    Each Merchandise Certificate shall be fully stackable and transferable, without limitation, and shall expire after ninety (90) from the date of issuance;

4

       ii.       Merchandise Certificates shall not be redeemable for cash;

      iii.      Each eligible Class Member shall be entitled to receive no more than one (1) Merchandise Certificate as part of this Settlement Agreement; and

      iv.      Class Members are *not* required to submit a claim form in order to opt-in to the class-wide settlement and/or receive their Merchandise Certificate.

**III.** **Group Relief and Additional Relief.** In addition to the individual relief to the settlement class provided above, J. C. Penney, Inc. has agreed to provide the following group and other relief.

**A.** **Safeguards as to Future Text Messaging.** J. C. Penney agrees that it shall implement safeguards to ensure that it complies with any express limitations that its Terms & Conditions place on the number of text messages transmitted to recipients. This shall not restrict its right, in its sole discretion, to later modify the Terms & Conditions.

**B.** **Payment of Notices and Administrative Fees:** The cost of the Notice Plan, including but not limited to the establishment and maintenance of the Settlement Website, and the costs of publication (including email and text messages to Class Members) are Settlement Administration Expenses and shall be borne solely by J.C. Penney Company, Inc.

**C.** **Service Award:** Subject to Court approval, Plaintiff Janimary Hernandez shall, in addition to any recovery that she is entitled to as a Class Member, be awarded an incentive award in the amount of $5,000 (the "Service Award"). J. C. Penney shall not object to, or otherwise challenge, directly or indirectly, Class Counsel's application for a Service Award if limited to such amount.

     **D.**    **Attorneys' Fees:** Class Counsel shall apply for legal fees in the amount of $750,000.00 in attorneys' fees, costs, and expenses associated with this action. Defendant agrees not to object to Class Counsel's fee application up to this amount.

     **E.**    **Release.**  In consideration of the relief described above, the release is applicable to all Class Members and releases any and all claims arising from J. C. Penney's transmission of Contested Texts (as defined in the Settlement Agreement). The full scope of the release, and its exact terms, is fully set forth at ¶4 of the Parties' class action Settlement Agreement, attached to the Declaration of C. K. Lee as **Exhibit A**. The release is properly tailored to the nature of the claims asserted in the lawsuit.

**IV.**   **Survey of Comparable TCPA Class Settlements.** Plaintiff's counsel has conducted a sampling survey of recent TCPA class settlements and have summarized their terms below. Based on this comparison of relevant cases, this instant settlement is a fair and excellent result for class members:

| Name | District | Class Size | Gross Smt Amt | Amount Received (per Claimant) | Claim Form | Stackable Coupons | Legal Fees | Granted |
|------|----------|-----------|---------------|-------------------------------|-----------|-------------------|-----------|---------|
| *Goldschmidt v. Rack Room Shoes, Inc.* (18-cv-21220) | Florida Southern District | 5,193,993 | $25,969,965 (excluding the $10.00 vouchers) | $5.00 check for any Class Member that returns a Claim Form, plus $10.00 voucher | Y | Loaded to rewards account | 15.79% of gross settlement | Preliminary Approval |

| *Ashkenazi v. Bloomingdales, Inc.* (15-cv-2705) | District of New Jersey | 46,561 | $1,400,000 ($750,000 cash and $650,000 vouchers) | Choice of $25.00 cash or a $50.00 voucher | Y | Not specified | 30% of gross settlement | Final Approval |
| *Wojcik v. Buffalo Bills, Inc.* (12-cv-2414) | Middle District of Florida - Tampa Division | 39,750, divided into 3 tiers | $2,487,745.00 | Tier 1: $57.50 Tier 2: $65.00 Tier 3: $75.00 | Y | Debit cards, transferable and valid for 48 months | N/A ($562,500, paid separately) | Final Approval |
| *Berkson et al. v. Gogo* (14-cv-01199) | Eastern District of New York | 170,363 | $3,707,839 | Internet: $16 day passes and $5 one-hour passes (# of passes given varies from 1-6) | Y | Transferable and able to sell | 20% of gross settlement | Final Approval |

| Name | District | Class Size | Gross Smt Amt | Amount Received (per Claimant) | Claim Form | Stackable Coupons | Legal Fees | Granted |
|------|----------|-----------|---------------|-------------------------------|------------|-------------------|-----------|---------|
| *Abante Rooter and Plumbing, Inc. v. New York Life Insurance Company* (16-cv-3588) | Southern District of New York | 25,830 | $3,350,000 | Up to $815 cash payment *each*, assuming a 10% claims rate | Y | No | 33.33% of gross settlement | Preliminary Approval |

| Name | District | Class Size | Gross Smt Amt | Amount Received (per Claimant) | Claim Form | Stackable Coupons | Legal Fees | Granted |
|---|---|---|---|---|---|---|---|---|
| *Spillman v. Domino's Pizza LLC* (10-cv-349) | M.D. Louisiana | 1,152,617 | $9,750,000 | 314,231 claimants received a $15.00 monetary voucher and the remainder of the claimants received a voucher for 1 large, one-topping pizza | Y | Not applicable | 26% of gross settlement | Final Approval |
| *Dipuglia v. US Coachways Inc.* (17-cv-23006) | Southern District of Florida | 2,342,239 | $46,844,780 (Goods/Services Value) or $35,133,585 (Cash) | $12.97 cash or $17.29 certificate for goods/ services | Y | Not specified | 10% of gross settlement | Final Approval |
| *Anthony Oliver v. The Men's Wearhouse, Inc.* (16-cv-01100) | Central District of California | Not specified | $1,800,000 | $10 cash or $20 voucher or *pro rata* - whichever is less | Y | Not redeemable online, transferrable, no minimum purchase | 25% of gross settlement | Final Approval |

8

| *Kyle Sullivan and Jeanne Sloan v. Wenner Media LLC* (16-cv-960) | Western District of Michigan | 57,619 direct subscribers, unknown number of indirect subscribers | $1,100,000 | Indirect subscribers receive a voucher redeemable for a 6-month subscription to *Rolling Stone* magazine. Direct subscribers receive a *pro rata* cash payment, plus a voucher for a 1-year subscription to *Rolling Stone* | Y | Not applicable | 27% of gross settlement | Final Approval |
| *Agne, et al. v. Papa John's International Inc., et al.* (10-cv-1139) | Western District of Washington | More than 220,000 | $16,585,000 | Voucher for free pizza (retail value of $13.00) + $50.00 cash (for those who submit valid claim form) | Y/N | Transferrable, automatic for those provided w/ notice | 14.8% of gross settlement | Final Approval |

## **ARGUMENT**

### I.    **Preliminary Approval of the Settlement Is Appropriate**

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg* § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.")

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) ("A district court's approval of a class action settlement is reviewed for exceeding its discretion. … In class settlement cases, we accord the trial judge's views great weight because of her position on the firing line, where she is exposed to the litigants, and their strategies, positions and proofs") (internal quotes and citations omitted); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("It is within a trial court's discretion to approve a proposed class action settlement.")   In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties," and keep in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Id.* (internal quotation marks omitted).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, 04 Civ. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citation omitted). The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the class is worthwhile. Newberg 13.13; *see also In re NASDAQ Market-Makers Antitrust*

*Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."). This Court has broad discretion to approve or reject a proposed settlement. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("This Court will disturb a judicially-approved class action settlement only when there is a clear showing that the District Court abused its discretion.").

Courts determine fairness upon review of both "the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores*, 396 F.3d at 116.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (citations omitted); *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 552 (W.D.N.Y. 2018) (recognizing that courts treat the adversarial nature of a litigated case as an "adequate indicator" of the fairness of a settlement (quoting *Romero v. La Revise Assocs.*, *L.L.C.*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014)).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the Final Approval Hearing, where Class Members may be heard and further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented. *See* MCL 4th 21.634. *see*

11

*also In re Baldwin-United Corp.*, 105 F.R.D. 475, 485 (S.D.N.Y. 1984) (authorizing provisional class certification and notice "without prejudice to the findings the Court will make after conducting the fairness hearing, at which time all objections or arguments in opposition to the proposed settlements will be heard and considered and proponents must discharge their burden to prove that the proposed settlement agreements are fair and reasonable"); *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (to grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness").

### A. The Settlement Is Fair, Reasonable, and Adequate.

Although the Court's task on a motion for preliminary approval is merely "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness," Newberg § 13.13, it is useful for the Court to consider the criteria by which it will ultimately judge the settlement.

In evaluating a class action settlement, courts in the Second Circuit look to the "Grinnell factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g., Romero*, 58 F. Supp. 3d at 420 (S.D.N.Y. 2014). *Accord Surdu v. Madison Global, LLC*, No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *4 (S.D.N.Y. Mar. 23, 2018). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant

risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1. **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them." *Surdu*, 2017 WL 3842859, at *10 (S.D.N.Y. Sept. 1, 2017) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception to this rule, with more than two million potential class members and significant legal disputes over the propriety of class action certification and as to the merits.

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay. There would be further fact discovery, depositions, expert discovery, and class certification proceedings pursuant to Fed. R. Civ. P. 23, all at significant cost to the parties. A complicated trial would also likely be necessary. Given the electronic nature of the claims, extensive electronic discovery, including use of experts, will be necessary. Preparing and adducing evidence on the complex factual and legal issues at such a trial would consume vast amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute. Any judgment would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes meaningful relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

2. **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

Notices of the settlement and its details have not yet been issued to the class.  At this early stage in the process, Plaintiff Hernandez's agreement to the terms of settlement weighs in favor of preliminary approval. Given that class members are loyalty program shoppers of J. C. Penney who allegedly signed up to receive promo code discounts, they are unlikely to oppose a settlement that gives them precisely this. *See Berkson v. Gogo, LLC*, 147 F. Supp. 3d 123, 133 (E.D.N.Y. 2015) ("the parties submitted convincing evidence that a significant portion of the class consists of repeat consumers who are sophisticated business persons likely to use defendants' service and the promo codes during the next year…The promo codes are likely to provide meaningful compensation.").

3. **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)**

Although preparing this case through trial would require many more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman*, 293 F.R.D. at 475 (quoting *Warfarin*, 391 F.3d at 537).  The pretrial negotiations and discovery must be sufficiently adversarial that they are "not designed to justify a settlement, [but rather represent] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 176 (S.D.N.Y. 2000)*, aff'd sub nom.  D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) (internal citations omitted).

Through Scheinman Arbitration & Mediation Service, the parties engaged the services of Martin Scheinman, an experienced mediator with more than 40 years of practice in law, to assist them with their settlement discussions, which only took place after Plaintiff's counsel became aware of the scope and size of the promotional text messaging at issue.  At all times the settlement

discussions were arm's length and adversarial in nature. Lee Decl. ¶ 9. Significantly, it required more than a year of settlement negotiations before the parties arrived at a settlement in principle, with each party initially rejecting the other's offers of settlement.

Where a settlement is reached only after extensive arm's-length negotiations by competent counsel who had more than adequate information regarding the circumstances of the Action and the strengths and weaknesses of their respective positions, it is entitled to a "strong initial presumption of fairness." *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997). The opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement. *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, absent evidence to the contrary. *See Newberg* § 11.28, at 11-59 (3d ed. 1992) (counsel are "not expected to prove the negative proposition of a noncollusive agreement"). Accordingly, the Parties' discovery here meets this standard and the proposed settlement is entitled to a "strong initial presumption of fairness." *PainWebber*, 171 F.R.D. at 125.

### 4. <u>Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)</u>

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) (quoting *In re Austrian*, 80 F. Supp. 2d at 177). Although Plaintiff believes their case is strong, it

is subject to considerable risk as to liability and damages. A trial would involve significant risks to Plaintiff because of the fact-intensive nature of proving liability under the TCPA, especially when *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) has raised new, as-yet unresolved questions about the definition of an autodialer under the TCPA.

For example, more recently in *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 (E.D.N.Y. 2019), Judge Allyne R. Ross of the Eastern District of New York opined that because the defendant determines the time in which the text messages are sent to the recipient, they operate with too much human involvement to meet the definition of an autodialer. If this Court were to follow that decision, then there would be no liability whatsoever for Defendant.

Plaintiff believes that she could ultimately establish Defendant's liability, but recognizes that this would require significant development of the factual record. Plaintiff's counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain.  The proposed settlement alleviates these uncertainties, which weighs heavily in favor of preliminary approval. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd*., No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.")

### 5.    Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

While the proposed Class is readily ascertainable, this does not eliminate all the risk, expense, and delay associated with class certification, especially given the aforementioned

questions regarding the definition of an autodialer.  Moreover, Defendant would argue that class members do not have common claims because many class members would have agreed to the ninth text, and would have agreed to receive unlimited texts because they were loyalty program shoppers who wanted notice of any deals or discounts that the store could have in real time manner. This factor favors preliminary approval.

### 6.    Defendant's Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7)

Given that Plaintiffs allege over two (2) million violations, statutory penalties under the TCPA would be astronomical. Such liability would either never be translated into meaningful relief or result in annihilating damages. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 324 (N.D. Ga. 1993) ("The Court finds that should plaintiffs succeed on the merits of their case, the unstable financial condition of the airline industry would render collection of a judgment difficult. Even if plaintiffs were to succeed at collecting a judgment, the effort would be certain to drive the already bankrupt defendants out of business and to force most of the remaining defendants into bankruptcy. The Court will consider the financial effect on the economic viability of defendants in its continued assessment of the reasonableness of the settlement."). Even if Defendant was able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted). However, given the current climate of brick and mortar retailers facing substantial challenges from Amazon and other online retailers, Defendant's ability to provide greater relief is suspect, even if a greater judgment is obtained at trial.

### 7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D.

211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Wal–Mart*, 396 F.3d at 119). Defendant has agreed to settle this case for the distribution of more than $20 million in redeemable, stackable, and transferable coupons, plus an additional amount to cover attorneys' fees and costs, service awards, and administration fees. The Merchandise Certificates are transferable, stackable, and can be applied to the purchase of any J.C. Penney merchandise of $10.00 or more at one of Defendant's Stores, either in person or online, for a period of up to 90 days after its initial issuance. The total gross liability expended on this case is $20,060,810 in coupons, $750,000 in legal fees, $600 in costs, $5,000 for a service award, and approximately $225,000 in administration fees, for a total of approximately $21,041,410.

The factors that sometimes militate against voucher settlements are not present here. *See Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("a coupon settlement is likely to provide less value to class members if, like here, the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated"); *STATE v. NINTENDO OF Am., INC.*, 775 F. Supp. 676, 681 (S.D.N.Y. 1991) ("the coupons will be freely transferable. Dr. Dorman believes that this further enhances the value of the coupons and may render them cash equivalents.").

Given the nature of the alleged injury, such relief is equitable, representing a good value given the attendant risks of litigation. While $10.00 is certainly lower that the TCPA statutory penalty of $500, Defendant maintains that Class Members had given their consent to receive its commercial texts in accordance with TCPA requirements. The bone of contention for purposes of

18

this settlement is the ninth text allegedly received in March 2018, which Plaintiff alleges exceeded the scope of any purported consent. Against this backdrop, relief in the form of $10 Merchandise Certificates is equitable, as the recipients are said to be individuals who had signed up to receive precisely this kind of benefit.

Thus, the *Grinnell* factors all weigh in favor of granting preliminary approval of the settlement at this early stage.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.      Certification of the Rule 23 Class Is Appropriate

For settlement purposes, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

> "All persons who received Contested Texts from Defendant between January 1, 2014 and the date of entry of the Preliminary Approval Order," with "Contested Texts" defined as "any text messages sent by Defendant to Plaintiff and Class Members in excess of eight text messages in a calendar month, including but not limited to, a ninth text message in March 2018."

Excluded from the Class are any entities in which Defendant has a controlling interest, counsel for the parties or Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family. Class Members are treated as a class for the purposes of settlement only.  Defendants do not admit or concede that class treatment is appropriate for any other purposes.

Plaintiff contends, and Defendant does not dispute for settlement purposes only, that this settlement class meets all of the requirements for class certification.  See Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a

class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Rule 23 class certification for settlement purposes and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *Grant v. Warner Music Grp. Corp.*, No. 13-CV-4449 (PGG), 2015 WL 10846300, at *1 (S.D.N.Y. Aug. 21, 2015) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3rd Cir. 1995)).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  They are in this case.

### A.    Numerosity

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (finding that Rule 23(a) requires that joinder be impracticable, not impossible). Numerosity is presumed where a putative class has forty or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  The numerosity requirement is readily satisfied given the putative class's size of  2,006,081. Accordingly, the proposed class satisfies the requirement that it be so numerous as to make joinder of their claims impracticable.

### B.     Commonality

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This requirement is readily satisfied.

All class members share the common issue of whether they received an unlawful ninth text message from J. C. Penney in March 2018 in excess of the eight (8) supposedly authorized messages in a given month. In addition, proving a TCPA violation would require the resolution of whether the equipment used to send the allegedly offending messages was an "automated telephone dialing system" ("ATDS"), *see* 42 U.S.C. § 227(b)(1)(A), which is also common to the class.

### C.     Typicality

Rule 23 next requires that the claims of the class representatives be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Romero*, 58 F. Supp. 3d at 418. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Vargas v. Howard*, No. 1:15-CV-5101-GHW, 2018 WL 387896, at *4 (S.D.N.Y. Jan. 10, 2018) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

In this case, Plaintiff Hernandez and the proposed class members are alleged to have received a text message in excess of what Defendant contends is the authorized eight (8) messages per month. There is nothing that distinguishes Plaintiff's circumstances from those of other Class members. Both the number and content of the texts are identical.

### D.        Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Sanders v. CJS Sols. Grp., LLC*, No. 17 CIV. 3809 (ER), 2018 WL 620492, at *5 (S.D.N.Y. Jan. 30, 2018) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff Hernandez has interests that are the same as those of the other Class Members. There is no indication that she has interests that are antagonistic or at odds with theirs. *See In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 CIV. 7990, 2017 WL 4541434, at *6 (S.D.N.Y. Oct. 10, 2017) ("[Plaintiff's] interests, recouping money invested, are similar to those of the proposed class"). Further, proposed Class Counsel have regularly engaged in major complex litigation and have had extensive experience in class action lawsuits that are similar in size, scope and complexity to the present case. Therefore, Plaintiff and her counsel will fairly and adequately represent the class.

### E.        Certification Is Proper Under Rule 23(b)(3)

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure further require that one of the three requirements of Rule 23(b) be satisfied. Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals and where the class action

mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.      <u>Common Questions Predominate</u>

Common issues of fact and law predominate in this case, given that there are actually no individual issues to determine. Each Class Member is alleged to have received exactly nine promotional text messages from J. C. Penney in March 2018, in violation of a TCPA authorization agreement that allows from only eight such texts monthly.  Regardless of how the Court would rule on these allegations, the ruling would be the same for every Class Member.

### 2.      <u>A Class Action is a Superior Mechanism</u>

Further, Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation &* Arbitration, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem Prods., Inc. v.* Windsor, 521 U.S. 591, 617 (1997) (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is a superior method for the fair and efficient adjudication of this case. Plaintiff's claims are shared by millions of consumers, and the resolution of millions of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See Gen. Tel. Co. of the Sw. v.* Falcon, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").

Statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation. As a result, Class Members are unlikely to be willing or able to pursue relief on an individual basis, making the class action the superior method of adjudicating these claims. For these reasons, provisional certification of the Settlement Class is appropriate.

## III.    Plaintiff's Counsel Should Be Appointed as Class Counsel

The lawyer representing Plaintiff, C.K. Lee of Lee Litigation Group PLLC, should be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel:  (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) Advisory Committee Note.

Class Counsel meet all of these criteria.  As set forth in the accompanying Declaration of C.K. Lee, Plaintiff's Counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiff's and potential class members' claims.  Plaintiff's counsel is familiar with Defendant's telecommunications policies and practices, specifically including the terms and conditions of the text messages subscription in question, and is therefore uniquely positioned to assess the risks in this case.  Additionally, Plaintiff's Counsel has substantial experience

prosecuting and settling class actions and is well-versed in consumer class action law and well-qualified to represent the interests of the class.  Courts have repeatedly found Plaintiff's Counsel to be adequate class counsel in class actions.

## IV.   The Proposed Notices Are Appropriate

### A.   The Proposed Notices Satisfy Due Process

The contents of the Proposed Notices, which are attached to the Declaration of C.K. Lee as **Exhibit B**, fully comply with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:
>
> > (i)      the nature of the action;
> >
> > (ii)     the definition of the class certified;
> >
> > (iii)    the class claims, issues, or defenses;
> >
> > (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v)     that the court will exclude from the class any member who requests exclusion;
> >
> > (vi)    the time and manner for requesting exclusion; and
> >
> > (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements.  They either provide, or direct Class Members to a website that provides, the following information: the terms of the settlement, information regarding the allocation of attorneys' fees, and specific information regarding the date, time, and place of the final approval hearing.  Accordingly, the detailed information in each of the Proposed Notices, and the multiple methods by which class members

will receive, and gain access to, the settlement terms and their options therein are more than adequate to put Class Members on notice of the proposed settlement and are well within the requirements of Rule 23(c)(2)(B).  Courts have approved class notices even when they provided only general information about a settlement terms.  *Charron*, 874 F. Supp. 2d at 191 (class notice need only "describe the terms of the settlement generally").  The Proposed Notices far exceed this bare minimum and fully comply with the requirements of Rule 23(c)(2)(B).

### B.    The Notice Plan, Award Distribution Process, and Release are Appropriate

The Settlement Agreement provides that a notice will be transmitted by email to the last known email address of each Class Member. The Claims Administrator will take reasonable steps to obtain the email addresses of any Class Member whose notice is marked as undeliverable and, where correct contact information are obtained, will attempt re-sending to those Class Members, either by email or postal mail.

The Proposed Notices contain information about how to exclude oneself and/or object to the settlement.  Class Members will have 45 days from the date of sending to submit opt-out requests or object to the settlement.

Likewise, the Court should preliminarily approve the releases of claims in the Settlement Agreement.  Those releases were bargained for at arms-length and are part of the compromise vigorously negotiated and consummated in exchange for the Settlement Amount.  The language of the releases is fair and effectuates the release of claims asserted in this litigation.

"[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). However, "while a release need not slavishly echo the claims in the complaint, it must appropriately track and not exceed

them." *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761 JD, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014) (citation omitted). The release proposed in the Settlement Agreement meets this standard.  The scope is somewhat broader than Plaintiff's individual claim in that it covers Contested Texts received during any month of the Class Period, not just March 2018. On the other hand, that scope remains tethered to Plaintiff's individual claim, in that it only covers texts sent in excess of the eight (8) allowed for by the authorization text recipients purportedly sign.  Individuals alleging that they never consented to receiving *any* texts will not have released those claims.

## V.    Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| Event | Timeline |
|---|---|
| Deadline for the Completion of Notices | 30 Days after Defendants provide the Class List (following Preliminary Approval) |
| Deadline for Final Approval Hearing | 120 Days or more after preliminary approval |
| Deadline for opting-out of the Settlement and for submission of Objections | 45 Days after the initial issuance of the Notices to Class Members |

## CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court enter the attached Proposed Order and: (1) grant preliminary approval of the Settlement Agreement, (2) conditionally certify the settlement class under Federal Rule of Civil Procedure

23(c), (3) approve the Proposed Notice, (4) approve Plaintiff's proposed schedule for final settlement approval and set a date for the Final Approval Hearing and related dates, and (5) appoint Plaintiff's Counsel as Class Counsel.

Dated: February 14, 2020                     Respectfully submitted,
       New York, New York

                                             **Lee Litigation Group, PLLC**

                              By:    */s/ C.K. Lee*_____
                                     C. K. Lee, Esq.
                                     148 West 24th Street, Eighth Floor
                                     New York, New York 10011
                                     Telephone: (212) 465-1188
                                     Email: cklee@leelitigation.com
                                     *Attorney for Plaintiff and the Class*